[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This case concerns the interests of Trevon G., a minor child whose date of birth is October 30, 1993. The Department of Children and Families (hereafter DCF) seeks to terminate the parental rights of the child's biological father, Trevor G. The parental rights of the biological mother, Faith P., were terminated by the Superior Court for Juvenile Matters during an earlier proceeding.
DCF initially filed a termination petition in this matter on November 13, 1997. Pursuant to the applicable subsections of C.G.S. 17a-112(c), the agency alleged the following four statutory grounds for termination against Trevor G: abandonment; failure to rehabilitate by the parent of a neglected or uncared for child; lack of an ongoing parent child relationship; and CT Page 510 failure to rehabilitate by the parent of a child under seven years of age, when said parent's parental rights have previously been terminated with respect to another child. With respect to each of these allegations, DCF alleged that the grounds for termination had existed for more than one year prior to the date the petition was filed.
DCF subsequently filed two other petitions in this matter. The second petition, dated on April 28, 1998, and filed at the court on April 29, 1998, alleged the same four grounds which were contained in the November 1997 petition. The third petition was dated June 15, 1998, but does not bear a time stamp indicating when it was received by the court. This petition only alleged grounds of abandonment and failure to rehabilitate by the parents of a child under seven whose parental rights have previously been terminated with respect to another child.
At the outset of the trial on October 26, 1998, counsel for the respondent father raised the issue of the disparity in the pleadings. Father's counsel argued that the last petition (which both he and the court incorrectly identified as the April 29, 1998 petition) did not allege lack of an ongoing parent-child relationship, and that he was not prepared to defend against that allegation. Counsel orally moved that the petitioner be precluded from pursuing that count, or introducing evidence or testimony with respect to it during the trial. DCF objected to the motion and asked that it be permitted to proceed at trial on its November 13, 1997 petition, and each of the four grounds for termination alleged therein.
The court ruled DCF could proceed on its November, 1997 petition and the four allegations which it contained. The court also ruled, however, that during the course of the proceeding various steps would be taken, if requested by the respondent, to accommodate his purported lack of notice concerning the "lack of an ongoing parent-child relationship count" of the petition. The court indicated that the respondent could ask for a continuance, or the right to recall witnesses, with respect to testimony on that allegation. On October 27, 1998, the court granted the respondent father's motion for an independent psychological evaluation of Trevor G.'s relationship with his son. This was performed, at court expense, by Dr. Robert Meier, a licensed psychologist, and the trial was continued at one point to await completion of this study. Despite the confusion created by DCF's multiple petitions, the court finds that the respondent was given CT Page 511 adequate time to prepare his defense with respect to each of the four allegations which were plead against him in the November 13, 1997 petition. DCF was permitted on October 26, 1998 to withdraw its April 29, 1998 petition. In keeping with the intent and spirit of the its ruling on that date, the court hereby dismisses the DCF petition under date of June 15, 1998.
The trial in this matter was held on October 26, 1998, October 27, 1998 and December 14, 1998. Upon the completion or trial, counsel for the petitioner and the respondent requested and received permission to submit memoranda of fact and law, which were received by the court on December 24, 1998. Trevor G. was present in court throughout the proceeding and was represented by his court appointed attorney. DCF and the minor child were also represented throughout the trial by their respective counsel.
At trial, DCF offered eight full exhibits into evidence, and also introduced the testimony of the following witnesses:
1. Elsie Vazquez, DCF social worker;
 2. Jennifer Richmond, intern, Village for Children and Families:
 3. Penelope Richard, family service coordinator, Community Renewal Team;
4. Bruce Freedman, Ph.D., court-appointed psychologist.
Trevor G. testified on his own behalf at trial, submitted three documents into evidence, and also called two additional witnesses:
 1. Dolores Staub, correctional counselor, Department of Corrections;
2. Robert Meier, Ph.D., court-appointed psychologist.
Counsel for the minor child participated fully in the trial but did not offer evidence or testimony.
 FACTUAL FINDINGS
CT Page 512
The court, having carefully considered all of the evidence adduced at trial, finds that the following facts were proven by clear and convincing evidence:
Trevon G. was born on October 30, 1993. (Petitioner's Exhibit 4, Page 1) The child's mother, Faith P., had an extensive history of neglect, homelessness, domestic violence and substance abuse. (Petitioner's Exhibit 2, Page 3). The biological mother's parental rights were terminated with respect to two older children, Treveonna G. and Shaquanna P., on July 19, 1993. (Petitioner's Exhibit 2, Page 3). Trevor G. is the biological father of Treveonna G., and his parental rights with respect to that child were also terminated on July 19, 1993. (Petitioner's Exhibit 2, Page 3). Trevor G. did not attend that earlier TPR proceeding.
On November 30, 1993, when Trevon was approximately one month old, the Hartford Probate Court awarded his temporary guardianship to Thomas P. Thomas P. is Trevon's maternal grandfather. (Petitioner's Exhibit 2, Page 3). The transfer of guardianship had been requested by the mother, who indicated that she was unable to care for the child. (Petitioner's Exhibit 2, Trevor G. became aware of Trevon's existence three days after the child was born. He believed then that he was the child's father. (Testimony of Trevor G.). When the maternal grandfather assumed the child's guardianship in November 1993, the biological father agreed to the placement and wished, in his own words, "to see how it goes." (Testimony of Trevor G.) The biological father claimed at trial that he gave money and supplies for Trevon to the grandfather. (Testimony of Trevor G.). There was no other testimony or evidence presented which corroborated these donations or visits. Trevor G. testified at an administrative hearing at DCF on September 29, 1997. In his testimony he alluded to the contacts which he had with the maternal grandfather during the time that Thomas P. was Trevon's temporary guardian. He did not mention visits with the child, or the contributions for his welfare, at the administrative hearing. The hearing officer's final decision notes:
"With respect to his past involvement with Trevon, [father] testified that he used to talk to Trevon's maternal grandfather all the time when Trevon lived with him, however, then the maternal grandfather moved and [father] did not know where he lived." (Petitioner's Exhibit 6, Page 3). CT Page 513
Upon learning that the mother was unable to care for the child and that his guardianship had been assumed by Thomas P., Trevor G. did not offer to care for Trevon. He did not acknowledge the child's paternity at that time . He did not intervene in the probate court, nor bring an action in the domestic relations division of the superior court, to establish his parental rights or to seek custody or visitation. The court finds that the biological father basically abrogated his parental responsibilities to the maternal grandfather during the period of time when Thomas P. cared for Trevon. The court further finds that Trevor G. did not have a consistent relationship with the child, did not adequately support the child, and did not maintain a sufficient degree of interest in, or concern for the child at this time.
Thomas P.'s temporary guardianship of Trevon expired on November 30, 1994. (Petitioner's Exhibit 2, Page 4). However, the child remained in the physical custody of his maternal grandfather and, on January 13, 1995, Thomas P. filed another petition for temporary guardianship with the Hartford Probate Court. (Petitioner's Exhibit 2, Page 4). A hearing was held at that court on February 9, 1995 concerning Thomas P.'s continued temporary guardianship of Trevon. (Petitioner's Exhibit 2, Page 4). At that hearing, Thomas P. withdrew his request for temporary guardianship. (Petitioner's Exhibit 2, Page 4). Trevon was returned to his mother, Faith P., who was then living in a homeless shelter. (Petitioner's Exhibit 2, Page 4).
Trevor G. did not participate in the Probate Court proceedings, and claimed at trial that he did not receive notice of them. (Testimony of Trevor G.). This testimony was partially contradicted by DCF social worker Elsie Vazquez, who testified that the biological father had been sent notice by the probate court. (Testimony of Elsie Vazquez). The court accepts the testimony of the social worker as the more credible evidence with respect to that issue.
On May 24, 1996, DCF received an ex parte order of Trevon's custody. (Petitioner's Exhibit 2, Page 5). DCF alleged at the time that the child was being permitted to live under conditions, circumstances and associations injurious to his well-being. (Petitioner's Exhibit 2, Page 5). The social study submitted by DCF notes that:
CT Page 514
 "At the time DCF obtained custody of Trevon, [mother] admitted daily use of cocaine and heroin. Furthermore, [mother] had unstable and unsafe housing and could not be relied upon to meet said child's basic needs." (Petitioner's Exhibit 2, Page 5).
Faith P. was abusing cocaine and living in her automobile at the time of the OTC. (Testimony of Elsie Vazquez).
Trevor G. attended the temporary custody hearing which was held at the Superior Court for Juvenile Matters in May of 1996. (Testimony of Elsie Vazquez). The court finds, based upon Trevor G.'s attendance at the OTC hearing, that the biological father was made aware at that time of the child's predicament and the neglectful circumstances which necessitated his removal from Faith P.'s home. Ms. Vazquez testified that the biological father did not offer his home as a placement resource for Trevon at this hearing.[1] At the time of the OTC hearing, the father was living with Claudine C., who was his girlfriend, and the mother of four of his eight children. (Testimony of Elsie Vazquez).
Ms. Vazquez visited Trevor G. On June 20, 1996. On that date, the biological father requested that DCF allow Trevon to live with him. During that meeting, Trevor G. also asked for visitation, and told the social worker that he had not seen Trevon since December, 1995 because he had not been permitted to do so by Faith P. (Testimony of Elsie Vazquez). DCF agreed to the father's request for visitation. The first visit was scheduled on July 1, 1996. Trevor G. arrived 40 minutes late. (Testimony of Elsie Vazquez). DCF arranged several other visits for the father before he was incarcerated in September, 1996.
On September 19, 1996, a paternity test confirmed that Trevor G. was Trevon's biological father. (Petitioner's Exhibit 2, Page 5). Trevon G. was committed to DCF's custody as a neglected child on November 14, 1996, and has remained continuously in DCF custody since the OTC was granted on May 24, 1996. (Testimony of Elsie Vazquez and Petitioner's Exhibit 2, Pages 2 and 5). Since then, the commitment has been extended twice. No court approved expectations were set for Trevor G. at the original commitment hearing. The court finds, however, that Trevor G. knew at the time of the OTC hearing that he needed to visit Trevon, take an active interest in his well being, and provide him with a suitable home. CT Page 515
Trevon G. was convicted of possession of narcotics with intent to sell in violation of C.G.S. 21a-277(a) on September 20, 1996. (Petitioner's Exhibit 1, Page 2). He received a total effective sentence of six years incarceration on that date. (Petitioner's Exhibit 1, Page 2.). His conviction resulted from an arrest on January 18, 1994. (Petitioner's Exhibit 1, Page 2). Trevor G. has been in the custody of the Connecticut Department of Corrections continuously from September 20, 1996 through the date when this trial ended. The respondent will become eligible for release on parole in March 1999, and his maximum release date is in the year 2000. (Testimony of Trevor G.).
The father had periodic visitation with Trevon at his place of incarceration. The social worker, Elsie Vazquez, brought the child to seven or eight of these visits and observed Trevon's interaction with his father. She described Trevon as being "restless" during these visits, although the court finds this may have been attributable to the lack of child-oriented amenities, and the austere conditions, in the prison visiting room.
While in prison, Trevor G. has successfully completed a drug rehabilitation program know as the "Tier II Program (Father's Exhibit A). He also completed two courses which provide inmates with instruction on finding alternatives to violence. (Father's Exhibit's B and C).
Despite telephone privileges, the father did not regularly contact the DCF social worker to inquire about Trevon's situation, and, on one occasion, Trevor G. refused to sign a DCF form which would have authorized the worker to inquire about the father's participation in Department of Corrections rehabilitation programs. (Testimony of Elsie Vazquez). During the time that he has been incarcerated, the father has not sent the child birthday cards or gifts, or gifts at Christmas, despite the availability of a prison program which helps inmates to provide gifts for their children. (Testimony of Elsie Vazquez).
During his testimony at trial, Trevor G. claimed that Faith P. told him in December 1995 that he was not the child's father and was no longer welcome to visit the child. He claimed that as a result of this action by the mother, he was unable to visit Trevon from December 1995 until around the time in 1996 when DCF assumed custody of the child. The court accepts Trevor G.'s CT Page 516 claims about the mother's comments as credible. The court also finds, however, that Trevor G. could have easily overcome Faith P.'s resistance to the father's visitation, had he chosen to do so.
Based upon Trevor G.'s criminal record, and his testimony during this proceeding, the court finds that the biological father is familiar with the legal system and understands — and exercises — his rights. The evidence at trial indicated that the father did not acknowledge paternity of the child until after the testing in 1996, and that he did not seek custody or visitation orders from any court at the time Faith P. made the statements in question. In summary, the court finds that had he wanted to, the father could have had visitation with Trevon during the time in question.
Several months prior to his incarceration, Trevor G. suggested to DCF that the child be permitted to live with him, and his girlfriend, Claudia C. After his incarceration, the father requested that Claudia C. be considered as the child's custodian. DCF assessed Claudia C.'s home in conjunction with the placement request, and, for a time, facilitated visitation between Trevon and Claudia C. (Testimony of Elsie Vazquez). DCF subsequently determined that it would not place Trevon in Claudia C.'s home, and Trevor G. appealed that decision at an administrative hearing conducted by the agency. (Petitioner's Exhibit 6). DCF Social Worker Elsie Vazquez testified at the treatment plan hearing, which was held on September 29, 1997 at the correctional facility in Enfield where the father was incarcerated. The worker testified there that she had been told by Claudia C. that Trevor G. had been imprisoned on drug charges, and that the father had engaged in drug activity in their shared home. (Petitioner's Exhibit 6, Page 2). Ms. Vazquez also stated that DCF's planned to seek a termination of Trevor G.'s parental rights and have Trevon adopted along with his brother, Jerome L.[2] (Petitioner's Exhibit 6, Page 4). The DCF adjudicator ruled that the DCF plan to reunite Trevon with Jerome was appropriate to the child's needs, and approved the treatment plan which precluded the child's placement with Claudia C. (Petitioner's Exhibit 6, Page 4). DCF subsequently stopped Trevon's visits with Claudia C.
After DCF denied the father's request to place Trevon with his girlfriend, Trevor G. offered his father, and his brother, as potential placement resources for Trevon. Both men were CT Page 517 unacceptable to DCF. (Testimony of Elsie Vazquez). The paternal grandfather was ill and could not care for the child, and the paternal uncle told DCF that he had never met Trevon, did not know him, and could not care for him. (Testimony of Elsie Vazquez).
There was testimony at trial from two psychological evaluators concerning the allegation that Trevor G. did not have an ongoing parent-child relationship with Trevon. Dr. Bruce Freedman conducted a court-ordered psychological evaluation on August 7, 1998. (Petitioner's Exhibit 3). Although Dr. Freedman opined that he did not believe there was a parent-child relationship in 1997 or thereafter, he based this conclusion on the historical record, and did not personally observe the biological father interact with Trevon. This was not an omission on the evaluator's part, as Dr. Freedman was not requested to conduct such an interactional assessment by the court. During cross examination, Dr. Freedman admitted that during the past five years he had observed parent-child interaction in every other case involving a four-year-old child where he had been asked to provide an opinion in court concerning this type of allegation. Although it was not Dr. Freedman's fault that he was not requested to conduct an interactional assessment, the court believes that this type of evaluation should have been undertaken. Accordingly, the court will not consider Dr. Freedman's opinion as probative on the termination count of lack of a parent-child relationship.
At the request of the respondent father, Dr. Robert Meier was ordered by the court to perform a psychological evaluation of the relationship between Trevor G. and Trevon. (Petitioner's Exhibit 8). Dr. Meier conducted the evaluation on November 3, 1998, and issued a report dated November 30, 1998. (Petitioner's Exhibit 8, r. Meier wrote that Trevon "needs permanency as soon as possible." (Petitioner's Exhibit 8, Page 4). His report also noted:
 "In summary, Trevon recognized [father] as someone he had seen and with whom he had spent time. There was no indication of a close emotional bond, no acceptance of physical affection or contact by the child, and no behavior indicating or suggesting an ongoing parent/child relationship. There was no evidence that father was viewed as the psychological parent." (Petitioner's Exhibit 8, Page 3).
CT Page 518
In 1997, the Superior Court for Juvenile Matters ruled that further efforts to reunify Trevon with Faith P. and Trevor G. were no longer appropriate.
 ADJUDICATION I. Abandonment (as per C.G.S. 17a-112(c)(A)): In determining whether or not statutory abandonment has been proven, the court is required to focus on a parent's conduct. Inre Rayna M., 13 Conn. App. 23, 36, 534 A.2d 897 (1987). Abandonment occurs when a parent "has failed to maintain a reasonable degree of interest, concern or responsibility as to the welfare of the child." C.G.S. 17a-112(c)(A).
Despite awareness of the child's birth and the belief that Trevon was his son, Trevor G. did little to assist the child or contribute to his well-being during the first three years of Trevon's life. The father did not intervene when the mother was unable to care for the newborn infant, and he allowed the maternal grandfather to become his son's primary caretaker. Trevor G. never supported the child prior to being incarcerated. He did not acknowledge paternity of the child during the time when Trevon was under Thomas P.'s care. Despite his claims to the contrary, the court has found that Trevor G. abrogated his parental responsibilities, had little contact with the child and his guardian, and displayed little interest in Trevon, or concern for his welfare, and did not offer appropriate support and assistance to the child during this period of time.
Similarly, the biological father did little to provide assistance in May of 1996 when DCF removed Trevon from Faith P.'s care. If Trevor G. had knowledge of the neglectful conditions to which the child had been subjected prior to the OTC, he should have intervened. If he did not know what was happening to the child at that time, he reasonably should have taken steps to locate the locate the child and ascertain information about his care and circumstances. As noted above, the court does not accept the respondent's claim that he lost contact with Trevon because the mother did not want him to visit the child. Trevon G. could have taken legal measures and other steps to find Trevon, compel visitation and intervene on his behalf. The court finds the child's circumstances immediately prior to the OTC to be further evidence that Trevor G. failed to maintain a reasonable degree of interest, concern and responsibility for Trevon's welfare at that time. CT Page 519
The DCF social worker claimed that Trevor G. did not offer to take custody of Trevon at the OTC hearing on May 24, 1996. This was disputed by the father, who claims that he articulated the desire to have the child live with himself and Claudia C. on that date. The social worker indicated that the father did make such a request when she met with him in June of 1996. The respondent's offer subsequently proved to be a hollow one, however. Trevor G. received a six-year prison sentence in September 1996, and Claudia C. was not approved by DCF as an appropriate placement resource for the child.
This court is mindful that "incarceration of a parent alone, does not constitute abandonment or cause for termination of that parent's rights." In re Michael M., 29 Conn App. 112, 120 (1992). The court is also well aware that a parent is not required to assume full custody of a child, and may rely on available support systems in exercising parental responsibility for a child. In reMigdalia M., 6 Conn. App. 194, 504 A.2d 533, cert. denied199 Conn. 809, 508 A.2d 770 (1986).
In the instant case, however, the respondent's 1996 conviction for a 1994 narcotics felony, exacerbated an already deleterious situation for the child. Trevor G. failed to function as a responsible parent for Trevon during the first three years of the child's life. The six-year sentence which was imposed in 1996 further removed him from the child's world. Trevor G. requested and received some visits with the child in prison. He has not, however, sent the child cards or gifts on birthdays, and Christmas and, until recently, he did not contact the social worker to inquire about Trevon's welfare. The biological father did suggest other persons who might care for Trevon. All were unacceptable to DCF.
"The commonly understood general obligations of parenthood entail these minimum attributes: (1) express love and affection for the child; (2) express personal concern over the health, education and general well-being of the child; (3) the duty to supply necessary food, clothing and medical care; (4) the duty to provide an adequate domicile; and (5) the duty to furnish social and religious guidance." (Citations and internal quotation marks omitted). In re Kezia M., 33 Conn. App. 12, 17-18, 632 A.2d 1122
(1993). The court finds that Trevor G. has not adequately fulfilled these obligations for Trevon. CT Page 520
The court finds that DCF has proven by clear and convincing evidence that Trevor G. has failed to maintain a reasonable degree of interest, concern and responsibility as to Trevon's welfare, over an extended period of time, which is not less than one year prior to November 13, 1997.
2. Failure to rehabilitate by parent of a neglected child (asper C.G.S. 17a-112(c)(B): A court may find this ground for termination if clear and convincing evidence establishes that "the parent of a child who has been found by the Superior Court to have been neglected or uncared for in a prior proceeding has failed to achieve such degree of personal rehabilitation as would encourage the belief that within a reasonable time, considering the age and needs of the child, such parent could assume a responsible position in the life of the child. C.G.S. 17a-112(c)(B). "Personal rehabilitation as used in the statute refers to the restoration of a parent to his former constructive and useful role as a parent." (Internal quotation marks omitted). Inre Migdalia M., supra, 203; In re Micbael M., 29 Conn. App. 112,124 (1992).
Although there no court approved expectations were established for Trevor G. when Trevon was committed as a neglected child on November 14, 1996, the court finds that the father knew the things which he would have to do in order to correct the conditions which led to the child's commitment. The respondent has known since shortly after the child's birth that Faith P. was unable to care for him. The father attended the OTC hearing in May 1996, after DCF removed Trevon. Accordingly, Trevor G. knew that he needed to demonstrate an active interest in the Trevon, provide Trevon with appropriate support, guidance and nurture, and find him a suitable home.
With the exception of some visitation, and his suggestions concerning unacceptable parental surrogates, Trevor G. has failed to fulfill a responsible parental role for Trevon. Since his incarceration, the respondent has completed a drug rehabilitation program and two anti-violence classes. The court finds that these efforts do not constitute a sufficient degree of personal rehabilitation. Trevon, who is five years old, has never been in the father's care. The child has been in DCF custody for more than two years and seven months. The child exhibits aggressive and defiant behavior. (Testimony of Elsie Vazquez and Penelope Richard). Penelope Richard, the family service coordinator for CT Page 521 the Community Renewal Team, testified that she was concerned that Trevon has remained in a foster home for so long. She opined that the child feels insecure as a result of his lack of permanency, and engages in aggressive behavior as a result. The court accepts Ms. Richard's observations and conclusions on this issue as fact.
Having considered Trevon's age and needs — and particularly his acute need to be placed in a permanent home — the court finds that Trevor G. could not assume a responsible position in the life of his child within a reasonable time. DCF has proven this ground for termination by clear and convincing evidence. The petitioner also established by clear and convincing evidence that this ground for termination has existed for more than one year prior to the commencement of this action.
3. Lack of ongoing parent-child relationship (per C.G.S.17a-112(c)(D): An ongoing parent-child relationship is defined by statute as "the relationship that ordinarily develops as a result of a parent having met on a day to day basis the physical, emotional, moral and educational needs of a child." C.G.S.17a-112(c)(D). In rendering an adjudication with respect to this termination ground, the court must take a two-pronged approach:
 "First there must be a determination that no parent-child relationship exists and, second, the court must look into the future and determine whether it would be detrimental to the child's best interests to allow time for such a relationship to develop. " In re Michael M., supra, 128.
The child has never been in the care of his biological father, and, prior to his incarceration, Trevor G. did not take an active interest in the child's well being or make any concerted effort to provide for the needs delineated in this statute. The father had some contacts with Trevon prior to the time when DCF assumed his custody. He has had some visitation since then, both before and after his incarceration.
Dr. Meier, the court-appointed psychologist, found that no ongoing parent-child relationship existed between the Trevor G. and Trevon. (Petitioner's Exhibit 8, Pages 3 and 4). He observed no close bond between them, and found that their interaction ". . . was more characteristic of a child interacting with an CT Page 522 acquaintance or adult friend as opposed to a parent." (Petitioner's Exhibit 8, Page 3).
DCF has proven by proof which was clear and convincing that no ongoing parent child relationship existed between Trevor G. and Trevon for a period of time longer than one year prior to November 13, 1997.
Dr. Meier and Ms. Richard of the Community Renewal Team both expressed their opinion that the Trevon had already spent too much time in foster care and had a critical need for permanency. As noted above, Ms. Richard saw linkage between the five-year old's aggressive behavior and the emotional trauma which he experienced due to his lack of a permanent home. The court has accepted these professional opinions as fact. Accordingly, the court also finds by clear and convincing evidence that it would be detrimental to Trevon's best interests to allow Trevor G. further time to establish a parent-child relationship.
4. Failure to rehabilitate/prior termination (Per C.G.S.17a-112(c)(E): As set forth above, this court found by clear and convincing evidence at trial that Trevor G. has failed to achieve such degree of personal rehabilitation as would encourage a belief that within a reasonable period of time, considering the age and needs of the child, he could assume a responsible position in Trevon's life. The court hereby reiterates each of the findings that it made with respect to count two of the termination petition, and incorporates them by reference as its findings with respect to this count of the petition. The court also finds, based upon clear and convincing evidence presented at trial, that Trevon is under seven years of age, and is currently committed to DCF as a neglected child. The court further finds, also based upon clear and convincing evidence, that Trevor G.'s parent rights with respect to his child, Treveonna G., were terminated on July 19, 1993. Based on all of the forgoing, the court finds that DCF proved this statutory ground for termination by clear and convincing evidence. The court also finds that this ground for termination has existed for more than one year prior to the initiation of this action.
 DISPOSITION
Having determined that DCF has proven statutory grounds for termination by clear and convincing evidence, the court now addresses the issue of disposition. DCF has the burden of CT Page 523 establishing by clear and convincing evidence that termination of parental rights would be in Trevon's best interests.
The child was seriously neglected by his mother, whose parental rights have already been terminated. He has never been in his father's care, and does not regard Trevor G. as a parental figure. Trevon is five years old, and has spent two years and seven months in foster care. Dr. Meier noted in his written report that "this is beyond the maximum amount of time recommended for placement without a permanency plan" (Petitioner's Exhibit 8, Page 4). Dr. Meier also recommended that "this child needs permanency as soon as possible." (Petitioner's Exhibit 8, Page 4). Trevon exhibits very aggressive and defiant behavior, for which he receives therapy at the Village for Children and Families. His behavior is related to the insecurity which he feels as a result of his extended stay in foster care. Trevon has a close bond with his brother, Jerome L., and DCF's long-term plan is to reunite these siblings in a permanent home.
Before this court may enter judgment, it is required by C.G.S17a-112(e) to make the following factual findings:
1. DCF offered case work services and visitation to Trevor G. The respondent's incarceration several months after the agency assumed custody of Trevon prevented it from offering more extensive services to the respondent. Furthermore, during his incarceration, Trevor G. failed to cooperate with DCF's request for a release that would enable it to receive information about the father from the Department of Corrections. The petitioner established by clear and convincing evidence that both DCF and the Department of Corrections offered timely and appropriate rehabilitative services to the father.
2. For all of the reasons set forth above, the court finds by clear and convincing evidence that the petitioner made reasonable efforts to reunite the family pursuant to the Federal Adoption Assistance and Child Welfare Act. Furthermore, in 1997, the Superior Court for Juvenile Matters ruled in this matter that further efforts to reunite Trevon with each of his biological parents were no longer appropriate.
3. No court orders were entered in this case. The court has found, by clear and convincing evidence, that Trevor G. knew the measures which he would have to take in order to habilitate a relationship with Trevon and achieve reunification. CT Page 524
4. Trevon has no ongoing parent-child relationship with Trevor G. No close bond exists between them, and the child does not regard his biological father as a parental figure. The child has a close relationship with his brother, Jerome, and the petitioner appropriately plans to keep these siblings together.
5. Trevon is five years old. His date of birth is October 30, 1993.
6. Trevor G. has had some visitation with the child, and has completed three rehabilitation programs offered by the Department of Corrections. The court finds, based upon clear and convincing evidence, that he has not made sufficient efforts to adjust his circumstances, conduct or conditions so as to make it in the best interest of the child to return him to Trevor G.'s home within the foreseeable future.
7. Faith P. told Trevor G. in December 1995 that he was not the child's father and was no longer to welcome to see the child. This was inappropriate conduct on her part. However, the court has found that the mother's actions should not have prevented Trevor G. from actively participating in the child's life, had the father truly wished to do so. No unreasonable act by the petitioner, and no adverse economic circumstances, prevented Trevor G. from maintaining a meaningful relationship with Trevon.
 JUDGMENT
Having found by clear and convincing evidence that DCF proved statutory grounds for termination, and having made and considered the seven findings enumerated above, the court further finds that the petitioner proved by clear and convincing evidence that it is in the best interests of Trevon G. that his biological father's rights be terminated, in order that said child may enjoy the stability and permanency of an adoptive home.
Accordingly, the court hereby orders that the parental rights of Trevor G. in and to Trevon G. be, and hereby are, terminated. The court further orders that the Commissioner of the Department of Children and Families be appointed the statutory parent of Trevon G., for the purposes of placing said child in adoption, or securing other appropriate permanent placement for him. Said Commissioner shall tile with this court within 90 days of the date hereof, a written report indicating the progress which is CT Page 525 being made towards the adoption of this child, The court further orders that said Commissioner comply with all state and federal statutes and regulations dealing with any future permanency planning required for this child. Judgment may enter accordingly.
BY THE COURT:
Dyer, J.